IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BROSVILLE COMMUNITY FIRE DEPARTMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 4:14cv00009 |
| v. | ) ) | **MEMORANDUM OPINION** |
| NAVISTAR, INC., PHILLIPS & TEMRO INDUSTRIES, INC., and VT HACKNEY, INC., | ) ) ) ) ) | By: Hon. Jackson L. Kiser Senior United States District Judge |
| Defendants. | ) | |

Defendant Navistar, Inc. ("Navistar") has filed two motions: a motion to strike Plaintiff Brosville Community Fire Department's ("Plaintiff") proposed expert, Gordon Stobbelaar [ECF No. 26], and a motion for summary judgment [ECF No. 30]. Both motions were briefed by the parties and competently argued in open court. I have reviewed the pleadings, evidence, arguments of the parties, and applicable portions of the Record. For the reasons stated herein, I will deny Navistar's motion to strike Gordon Stobbelaar's testimony, and I will grant in part and deny in part Navistar's motion for summary judgment. Specifically, I will grant summary judgment on Counts IV and V, and deny summary judgment with respect to Count I.

### I.     STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiff Brosville Community Fire Department ("Plaintiff") is a Virginia corporation which owned and operated a fire station located at 11912 Martinsville Highway, Danville, Virginia. (Compl. ¶ 1 [ECF No. 1-1].) In January of 2012, Plaintiff owned a 2009 commercial rescue vehicle manufactured by Defendant VT Hackney, Inc. ("Hackney") and containing a cab

---

[1] On a motion for summary judgment, the facts are viewed in the light most favorable to the non-moving party, Brosville. See Scott v. Harris, 550 U.S. 372, 380 (2007).

and chassis designed and manufactured by Defendant Navistar, Inc. ("Navistar"). (See id. ¶¶ 2, 15.)

Navistar designs and manufactures cabs, chassis, and add-on equipment to aftermarket designers and manufactures of emergency rescue vehicles, such as fire engines. (See id. ¶ 4.) Navistar designed, manufactured, assembled, sold, and delivered an engine, cab, and chassis to Hackney. (Id. ¶ 5.) Hackney is an aftermarket designer, manufacturer, assembler, and seller of commercial rescue vehicles. (Id. ¶ 12.) It modified and added various equipment to the Navistar cab and chassis before selling the completed vehicle to Plaintiff. (See id. ¶ 13.)

One of the features on the Navistar engine is a block heater that was designed, manufactured, and sold to Navistar by Phillips & Temro Industries, Inc. ("Phillips").[2] (Id. ¶ 8.) Phillips assembled, warranted, and sold the 120-volt, 1,250-watt block heater and wiring to Navistar. (Id.) Phillips is also alleged to have sold to Navistar a "block heater plug-cord receptacle kit option with 14[-]gauge wire rated for 18 amperes." (Id. ¶ 9.) Phillips's instruction manual for the block heater "required" ground fault circuit interrupter ("GFCI") protection for the block heater and its wiring. (Id. ¶ 10.)

Navistar contends that it never received instructions from Phillips regarding GFCI protection; Plaintiff contends that, "[e]xemplar instructions probably were provided to Navistar." (Pl.'s Resp. to Def.'s Mot. to Strike Expert pg. 27, Nov. 25, 2014 [ECF No. 49]; see also Mark Hoglund Dep. 83:6–101:11, Oct. 13, 2014.)[3] The installation sheet states that the block heater

---

[2] Plaintiff notified the Court on December 2, 2014, that it had settled its claims against Phillips.

[3] Although Plaintiff relies on the allegation that Navistar "probably" had the instruction sheet but never passed that information along, in its response to Navistar's motion for summary judgment, it conceded the majority of Navistar's "undisputed facts." (See Pl.'s Resp. to Def.'s Mot. for Summ. J. pg. 2, Nov. 26, 2014 [ECF No. 50].) Among those facts is the allegation that, "Phillips never sent this installation instruction to Navistar." (Def.'s Mem. in Supp. of its Mot. for Summ. J. pg. 6, ¶ 28, Nov. 12, 2014 [ECF No. 31].)

- 2 -

should "connect only to a GFCI protected 120-volt AC outlet." (Id. Ex. 3.) Nevertheless, when Navistar sold the cab and chassis to Hackney for the purposes of after-market upfitting, Plaintiff alleges it did not pass along any instructions regarding GFCI protection for the block heater.

Additionally, Navistar's promotional materials intimated that its vehicles complied with National Fire Protection Association ("NFPA") 1901, and that compliance with NFPA 1901 "means safety and security is the number one priority." (ECF No. 49-3, BRO004088.) The brochure also stated: "Priority Sequencing automatically shuts down vehicle systems . . . to shield crew and vehicle from . . . electrical overload." (Id.)

When Navistar sold the cab and chassis, it included a Limited Warranty which stated:

> NO WARRANTIES ARE GIVEN BEYOND THOSE DESCRIBED HEREIN. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. THE COMPANY SPECIFICALLY DISCLAIMS WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE USER/PURCHASER, AND ALL OTHER OBLIGATIONS AND LIABILITIES. THE COMPANY FURTHER EXCLUDES LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES, ON THE PART OF THE COMPANY OR SELLER.

(Def.'s Mem. in Supp. of its Mot. for Summ. J. pg. 6, ¶ 28, Nov. 12, 2014 [ECF No. 31].) This language was listed under the heading, "**_DISCLAIMER_**." (Id.)

After installing the Phillips block heater in its engine, Navistar sold the engine, cab, and chassis to Hackney. Hackney modified and added various equipment and components and, in so doing, is alleged to have rewired parts of the vehicle, including the block heater. (Id. ¶ 13–14.) That vehicle was eventually sold to Plaintiff in October 2008. (See id. ¶ 13.)

On January 26, 2012, a fire broke out at Plaintiff's fire house in Pittsylvania County, Virginia, causing over $390,000.00 in damages. (Id. ¶ 15.) Plaintiff alleges the fire was caused by a failure of the block heater. When the heater failed, the electricity running through it arced,

shorted, and ignited the heater. Plaintiff alleges that block heater shorted out because of faulty or negligent design, instructions, or installation. As a result, Plaintiff filed suit against Navistar, Phillips, and Hackney, alleging counts of negligence, products liability, breach of contract, and breach of express and implied warranties. (See id. ¶¶ 19–99.) In support of its allegations, Plaintiff has identified Gordon Stobbelaar, an electrical engineer, certified fire and explosion investigator, and certified vehicle fire investigator, as an expert witness. Navistar moved to exclude Mr. Stobbelaar as an expert because, according to Navistar, "he lacks the specialized knowledge, experience, training[,] and education to qualify as an expert on the NFPA [National Fire Protection Association] [guidelines and standards]," and because "his opinions regarding Navistar's Cab and Chassis design and alleged failure to warn . . . is fatally flawed and inherently unreliable." Navistar has also moved for summary judgment, asserting several arguments. I heard oral arguments on both motions on Tuesday, December 9, 2014.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 governs the disclosure of expert testimony. According to the rule, witnesses who are retained or are specially employed to provide expert testimony are required to submit a written report concerning their anticipated testimony. The report must contain: "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts and data considered by the witness in forming them; any exhibits that will be used to summarize them; [and] the witness's qualifications . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i)–(iv). "Expert reports must not be sketchy, vague or preliminary in nature. . . . Expert reports must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." Salgado v. General Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998). "The incentive for total disclosure is the threat that the expert testimony not

- 4 -

Case 4:14-cv-00009-JLK-RSB   Document 61   Filed 12/16/14   Page 4 of 16   Pageid#: 1508

disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1). . . . The rule presents alternatives less severe than expulsion, however. If the expert's report contains only incomplete opinions, the court may choose to restrict the expert's testimony to those opinions alone." Id. (internal citations and quotations omitted).

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III. DISCUSSION

**A. Navistar's Motion for Summary Judgment**

Navistar moves for summary judgment on several grounds. First, it claims that Plaintiff's breach of warranty claims are barred by the statute of limitations. Second, it claims Navistar disclaimed all warranties other than the Limited Warranty. Third, Navistar believes it is entitled to summary judgment because Plaintiff has failed to establish the existence of a hazard or present evidence of causation. Fourth, Navistar claims it is entitled to summary judgment on Plaintiff's design-defect claims because Plaintiff has failed to set forth a safer alternative design. Finally, Navistar moves for summary judgment on Plaintiff's failure to warn claim because Plaintiff has failed to establish a hazard, a duty to warn, or causation.

*i. Implied Warranties*

Navistar contends that it is entitled to summary judgment on Plaintiff's breach of warranty claims because it disclaimed any warranties. With regard to the implied warranties, Navistar is correct.

"[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" Va. Code Ann. § 8.2-316(2) (2014). "To effectively disclaim implied warranties a written disclaimer must be 'conspicuous' and in the case of the implied warranty of merchantability must mention 'merchantability.' Factors for determining conspicuousness [sufficient to satisfy Va. Code Ann. § 8.2-316] include: size of the font used in the disclaimer language, type of the font, location on

- 6 -

Case 4:14-cv-00009-JLK-RSB   Document 61   Filed 12/16/14   Page 6 of 16   Pageid#: 1510

the page relative to other clauses, whether the clause is located on the first page, whether the clause is visually set apart on the page from other clauses, color of the font, and the distinctiveness of the heading." Hoffman v. Daimler Trucks N. Am., LLC, 940 F. Supp. 2d 347, 355–56 (W.D. Va. 2013).

In this case, Plaintiff has expressly alleged that, "Defendant Navistar breached its implied warranties of fitness for a particular purpose and merchantability . . . ." (Compl. ¶ 44.) The Limited Warranty that accompanied the vehicle, however, reads in part:

> ***DISCLAIMER***
>
> NO WARRANTIES ARE GIVEN BEYOND THOSE DESCRIBED HEREIN. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED. THE COMPANY SPECIFICALLY DISCLAIMS WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE USER/PURCHASER, AND ALL OTHER OBLIGATIONS AND LIABILITIES. THE COMPANY FURTHER EXCLUDES LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES, ON THE PART OF THE COMPANY OR SELLER. No person is authorized to give any warranties or to assume any liabilities on the Company's behalf unless made or assumed in writing by the Company; and no other person is authorized to give any warranties or to assume any liabilities on the seller's behalf unless made or assumed in writing by the seller.

(ECF No. 31-10.) In its response to Navistar's motion for summary judgment, and in its response to Navistar's motion to strike Plaintiff's expert, Plaintiff has not offered any argument why the aforementioned language in the Limited Warranty was not sufficient to disclaim any implied warranties under Virginia law.

Navistar's disclaimer was located on the first page of a two-page document. It was set off by a bolded heading reading "Disclaimer." It was in all-capital letters. These factors weigh in favor of finding that Navistar's disclaimer was effective. The section was not, however, in a

different color, and the font appears to be smaller than other sections on the same page.[4] Nevertheless, the totality of the factors establish that Navistar adequately disclaimed all implied warranties in the Limited Warranty, and thus Navistar is entitled to summary judgment on Count V of Plaintiff's Complaint.

ii. *Express Warranties*

Navistar also argues that Plaintiff has failed to identify any express warranties it made, and therefore it is entitled to summary judgment on Plaintiff's breach of express warranty claim (Count IV). Plaintiff does allege, however, that Navistar's advertisements and promotional material stated that Navistar's chassis complied with NFPA 1901 and that the vehicle's "Priority Sequencing automatically shuts down vehicle systems . . . to shield crew and vehicle from . . . electrical overload." (ECF No. 49-3, BRO004088.)

Plaintiff contends that, "Navistar represented that it was in 'voluntary compliance' with NFPA 1901 general requirements, chassis and vehicle components, and for driving and crew areas. It mentions NFPA compliance four times in the 49[-]page First Responders brochure, but unbelievably failed to comply in those areas that would have prevented or lessened the damages in Plaintiff's vehicles." (Pl.'s Resp. to Navistar's Mot. to Strike Expert pg. 7, Nov. 25, 2014 [ECF No. 49].) According to Plaintiff's theory, Navistar's representations in its promotional materials constituted an express warranty. See Daughtrey v. Ashe, 243 Va. 73, 76–78 (1992) (holding that an advertisement that is not mere opinion but which states a fact and which is a "basis of the bargain" can create an express warranty). Navistar counters that, if there was such a warranty it was disclaimed, or alternatively, there was no breach. (See Navistar's Mem. in Supp. of its Mot. for Summ. J. pg. 14 n.2, Nov. 12, 2014 [ECF No. 31].)

---

[4] Navistar contends that the font is larger than the surrounding paragraphs, but that is plainly wrong. (See ECF No. 31-10.)

- 8 -

I am constrained to conclude that the first statement in the promotional materials—"NFPA 1901/1906 and KKK 1822 compliance means safety and security is the number one priority"—does not create an express warranty. (See ECF No. 49-3, NAV-BRO004088.) The language only states that compliance with NFPA means safety; it does not represent that Navistar complied with NFPA 1901. While it is true that one may read that passage and *assume* that Navistar's cabs and chassis comply with NFPA, that conclusion requires an assumption that is absent from Navistar's statements and which cannot legally bind Navistar. This "passive" approach/"wordsmithing" is typical of advertisements and, in this case, requires that summary judgment be entered on Plaintiff's breach of express warranty claim.[5]

The other alleged warranty in the promotional materials—"Priority Sequencing automatically shuts down vehicle systems in order of importance to shield crew and vehicle from unsafe movement or electrical overload"—suffers a similar fate. (See ECF No. 49-3, NAV-BRO004088.) Whether or not this statement constitutes a warranty, Plaintiff has failed to show that Plaintiff breached it or that any breach was a proximate cause of Plaintiff's damages. Gordon Stobbelaar's report does not contain an opinion that: (1) the Priority Sequencing system described was not included in the Navistar chassis; (2) that the Priority Sequencing failed; or (3) that the failure of the Priority Sequencing was a proximate cause of Plaintiff's damages. Stobbelaar's only opinion regarding overload protection is that the fire could have been prevented had Hackney not connected the Phillips heater to the shorepower circuit without proper overload protection. (Stobbelaar Report pg. 8.) That opinion does not address any failure

---

[5] Alternatively, Va. Code Ann. § 8.2-316(1) compels that, when reasonable, any alleged warranty be read as consistent with the Disclaimer in the Limited Warranty. Here, even if Navistar's statement were to be read as a creating an express warranty, the Disclaimer clearly disclaims any express warranties. (See ECF No. 31-10.)

- 9 -

on Navistar's part. Therefore, Navistar is entitled to summary judgment on any claim of breach of express warranty based on that statement in Navistar's promotional materials.

Navistar also argues that the Limited Warranty (the only express warranty Navistar concedes was operative) was voided when Hackney modified the wiring for the block heater. (See ECF No. 31-10 ("What is not included under basic coverage . . . Vehicles/components which have had unauthorized alterations or modifications.").) Plaintiff has not alleged that the Navistar breached the Limited Warranty in any way. Therefore, summary judgment is appropriate on any claim that Navistar breached the express Limited Warranty.[6]

iii. *Evidence of a Hazard and Duty to Warn*

Navistar also contends Plaintiff has failed to establish a hazard or causation. "To prevail in a products liability case under Virginia law, the plaintiff must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary and foreseeable use." Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993). "Under either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." Logan v. Montgomery Ward & Co., Inc., 216 Va. 425, 428 (1975).

Plaintiff contends that the chassis was unreasonably dangerous because Navistar failed to include warnings about GFCI protection for the block heater. "A product is unreasonably dangerous if it is defective in assembly or manufacture, unreasonably dangerous in design, ***or unaccompanied by adequate warnings concerning its hazardous properties***." Va. Model Jury Instructions (Civil) § 34.076 (2014) (emphasis added). Here, Plaintiff argues that, in the absence

---

[6] Because I conclude that Navistar is entitled to summary judgment on both warranty claims, it is unnecessary to determine whether those claims were barred by the applicable statute of limitation.

of GFCI protection, the block heater was unreasonably dangerous. Navistar counters that Phillips never passed along instructions regarding GFCI protection, and thus Navistar had no duty to pass that information along to subsequent consumers (i.e., Hackney and Plaintiff). This factual dispute is appropriate for a jury to determine, as there is conflicting evidence in the Record regarding this theory. (See, e.g., Mark Hoglund Dep. 83:6–101:11 (describing whether or not Phillips's warning regarding GFCI protection was ever passed on to Navistar).)

Additionally, it is the jury's province to determine whether the heater was "unreasonably dangerous" in the absence of warnings regarding GFCI protection. Contrary to Navistar's argument, Stobbelaar will testify that GFCI protection would have prevented or reduced the damage caused by the fire (see Stobbelaar Report pg. 8), and thus there is evidence of causation on this claim.[7]

*iv. Design Defect and a Reasonable, Safer Alternative Design*

Summary judgment is appropriate on a negligent design theory where there is insufficient evidence of an alternative, feasible design. See, e.g., Lemons v. Ryder Truck Rental, Inc., 906 F. Supp. 328, 334 (W.D. Va. 1995). In regards to Navistar's design, Gordon Stobbelaar's report notes that, "The probability is the fire damage could have been prevented or reduced had Navistar separated the engine block heater cord-set line voltage wiring from the engine low voltage wiring as required by NFPA 1901 Article 22.10.1." (Stobbelaar Report pg. 8.)

---

[7] Navistar's arguments regarding "warnings" are too narrow. Navistar contends that the "duty to warn" means solely that a manufacturer has a duty to place physical warnings on products (i.e., a sticker on a hair dryer that reads, "Do not use this electrical device near water"). The duty to warn encompasses much more than simply a duty to write and place warnings on potentially dangerous products. Generally speaking, it is a jury's province to determine when a warning is necessary and whether a warning was sufficient, including its form.

Like Plaintiff's theory regarding GFCI protection,[8] I believe Plaintiff has presented evidence that a reasonable, safer alternative design existed: specifically, a design the abided by NFPA 1901. In his report, Stobbelaar concluded the fire damage could have been prevented had Navistar separated the engine block heater wires as required by NFPA 1901. (See Stobbelaar Report pg. 8.) At this stage, when I accept the facts in the light most favorable to the non-moving party, I believe Stobbelaar's opinion on this issue is sufficient to survive summary judgment. The issue of whether a separation in the wires would have made the vehicle safer is for a jury to determine.

### B. Navistar's Motion to Strike Plaintiff's Expert

Rule 26(a)(2)(B) requires a retained expert to provide a report containing, among other things: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; and (ii) the facts or data considered by the witness in forming the[ opinions]." Fed. R. Civ. P. 26(a)(2)(B). Inadequacy of a report is grounds for a witness' exclusion under Rule 37(c). See Sharpe v. United States, 230 F.R.D. 452, 459 (E.D. Va. 2005).

Federal Rule of Evidence 702 "was intended to liberalize the introduction of relevant expert evidence." Bombardiere v. Schlumberger Tech. Corp., 934 F. Supp. 2d 843, 845 (N.D.W. Va. 2013). "Nevertheless, in order to be admissible under Rule 702, an expert opinion must be both relevant and reliable." Hodges v. Federal-Mogul Cop., Case No. 7:12cv00362, 2014 U.S. Dist. LEXIS 29360, at *8 (W.D. Va. Mar. 7, 2014) (citing PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 123 (4th Cir. 2011)). "Determining the reliability of an expert opinion is a flexible inquiry, one which will necessarily depend on both the nature of the proffered opinion and the context in which it is offered." Id. at *8–9 (citing United States v. Hassan, 742 F.3d 104,

---

[8] An alternative design encompassing GFCI protection would have no bearing on Navistar's liability. There is no allegation or factual support for the contention that, when the vehicle left Navistar's factory, the block heater was not equipped with GFCI protection.

- 12 -

130 (4th Cir. 2014)). "Indeed, although the Supreme Court in Daubert listed several factors that may be used in evaluating the reliability of proposed expert testimony, ultimately 'Dabuert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'" Id. at *9 (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)).

In the present case, Navistar is not objecting to the content of Stobbelaar's report, but rather to the absence of certain opinions that Navistar believes Plaintiff may elicit from Stobbelaar. Navistar is correct that any opinion not disclosed prior to trial is generally inadmissible. See, e.g., Wilkins v. Montgomery, 751 F.3d 214, 221 (4th Cir. 2014) (quoting Fed R. Civ. P. 37(c)(1)). Navistar objects to Stobbelaar's possible testimony concerning: (1) warnings; (2) NFPA 1901; and (3) bundling of high- and low-voltage wires in the cab and chassis design.

Because several of Plaintiff's claims against Navistar do not survive Navistar's motion for summary judgment, it is not necessary to address all of Navistar's arguments. The only claims that remain against Navistar are whether it passed certain information on to VT Hackney, Inc., regarding GFCI protection, and whether compliance with NFPA 1901 would have made the cab and chassis safer.

Insofar as expert opinion is necessary to establish the purpose of GFCI protection, Stobbelaar is more than qualified to offer an expert opinion on that. He is a certified automobile fire investigator, a certified fire and explosion investigator, and has more than forty years experience as an electrical engineer.

Navistar contends that Stobbelaar lacks the necessary expertise to testify regarding NFPA 1901 because, among other things: (1) he read it for the first time in connection with this case; (2) he used the wrong version in writing his report; (3) he was wrong about the purpose of NFPA

1901; and (4) he has not contacted the NFPA to determine the purpose of NFPA 1901. All of these arguments go to the weight that a jury should give his opinion regarding NFPA 1901, not to the admissibility of Stobbelaar's opinion. Stobbelaar possesses the experience and knowledge to testify regarding the applicable standards.[9] As a certified automobile fire investigator and certified fire and explosion investigator, the applicable regulations are within the purview of his expertise. Cf. Hodges v. Federal-Mogul Corp., Case No. 7:12cv00362, 2014 U.S. Dist. LEXIS 29360, at *9–10 (W.D. Va. Mar. 7, 2014) (noting that, "[i]n the context of cause and origin opinions as to fires and explosions, courts have turned to National Fire Prevention Association (NFPA) 921 methodology for guidance in determining the reliability of expert opinions.").

Navistar's argument that Stobbelaar did not read NFPA until he became involved in this case does not, *ipso facto*, make him an unqualified witness. It does, however, present grounds on which to cross-examine him. The same is true of the argument that Stobbelaar relied on the wrong version of the regulations in his report.[10]

Navistar also argues that Stobbelaar is an improper expert because Stobbelaar did not "take **any** additional steps to understand NFPA 1901 beyond a superficial reading of it or to confirm the accuracy of his interpretation and application of the standard" (ECF No. 27 pg. 10), and that he did not submit his conclusions in this case to peer review. Simply put, Navistar is imposing a standard on potential expert that is far too onerous to be tenable. In essence, Navistar is saying that every expert who wishes to testify about applicable regulations must first contact the issuing agency for guidance and additional training, and that he must submit *every* opinion in *every* case to peer review. In the present case, Stobbelaar is an electrical engineer with over 40

---

[9] At oral argument, Navistar conceded that the NFPA standards are the "gold standard" in the fire apparatus manufacturing industry, and that they generally would apply in this case.

[10] It appears that, although Stobbelaar used the wrong version, the substance of the regulation did not change from one version to the next.

years of experience. He is a certified fire and explosion investigator, and a certified automobile fire investigator. That training is more than sufficient for him to understand the requirements of regulations applicable to his field of expertise.

For these reasons, Navistar's motion to strike Stobbelaar's testimony will be denied. Additionally, I see no reason to strike Stobbelaar's timely supplementation of his expert report, so the relevant opinions expressed therein will be permitted at trial.

## IV. CONCLUSION

Navistar adequately disclaimed any implied warranties with its conspicuous Disclaimer. The only express warranties that Plaintiff contends Navistar made are the statements in its promotional materials that the chassis was NFPA-compliant, and that its "Priority Sequencing" would shut the vehicle down in the event of an electrical overload. The former is not a warranty, and there is no evidence of a breach of the latter. For these reasons, Navistar is entitled to summary judgment on Plaintiff's breach of express and implied warranty claims (Counts IV and V).

Gordon Stobbelaar's opinion regarding NFPA 1901 is evidence of a reasonable, safer alternative design. Plaintiff's negligent design claims will proceed to trial.

Plaintiff's claims on duty to warn should also be submitted to a jury. There is circumstantial evidence from which a jury could conclude that Navistar knew the Phillips heater required GFCI protection, but that Navistar never passed that information on to Hackney. The lack of GFCI was a cause of the fire. Because a jury could conclude that Navistar knew that the vehicle was potentially dangerous if the heater was not GFCI protected, Navistar is not entitled to summary judgment on Plaintiff's failure to warn claims. That claim will also proceed to trial.

Gordon Stobbelaar possesses the necessary experience and qualifications to testify as an expert, and he will be permitted to testify on the remaining counts against Navistar.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 16th day of December, 2014.

                                            s/Jackson L. Kiser
                                            SENIOR UNITED STATES DISTRICT JUDGE

- 16 -

Case 4:14-cv-00009-JLK-RSB   Document 61   Filed 12/16/14   Page 16 of 16   Pageid#: 1520